here is insufficient to show adoption. We think, also, that Young Shoop Yin was properly excluded as an accompanying alien.

The judgment of the court below, denying the writ of habeas corpus, is affirmed.

---

## CHESAPEAKE & O. RY. CO. v. KERNS.

(Circuit Court of Appeals, Sixth Circuit. May 5, 1926.)

No. 4541.

Master and servant ⬤⟞139—Failure to notify car repairer of movement of other cars held not actionable, where repairer was injured by fall on becoming alarmed, though not in danger.

Railroad car foreman's failure to notify car repairer, working under car on repair track, of intended movement of cars on another part of such track, *held* not actionable negligence, where repairer was never in any danger, and foreman was not required to anticipate that he would be injured by falling against wheel of car in attempting to get from under it, on becoming alarmed.

In Error to the District Court of the United States for the Western Division of the Southern District of Ohio; Smith Hickenlooper, Judge.

Action by Lon M. Kerns against the Chesapeake & Ohio Railway Company. Judgment for plaintiff, and defendant brings error. Reversed.

F. M. Tracy, of Cincinnati, Ohio (Galvin & Tracy, of Cincinnati, Ohio, on the brief), for plaintiff in error.

Wm. F. Marsteller, of Cleveland, Ohio (D. F. Anderson, of Youngstown, Ohio, on the brief), for defendant in error.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

MOORMAN, Circuit Judge. The defendant in error, Kerns, was employed by the Chesapeake & Ohio Railway Company at St. Albans, W. Va., as a car repairer. While so engaged on September 12, 1923, he was injured in attempting to get out from under a car on which he had been working. He sued the railway company and recovered damages. The question before us is whether the District Court should have directed a verdict for the defendant.

Kerns was working on a track used exclusively for the repair of cars. It was intersected by a street 52 feet wide, known as Fifth avenue. On the occasion in question it was occupied to its full capacity, after allowing for proper spacing between the cars to permit the men to work. At the northern end, which was the service end, there was a blue flag, indicating that men were at work on the track. There was also an open derail, which made it impossible for a locomotive or car to enter upon the track. Between the blue flag and Fifth avenue there were seven cars, six of which were coupled together, the other being 9 feet from the car nearest to it. These cars had been repaired. South of Fifth avenue there were seven cars, each separated 9 or 10 feet from the one nearest to it. The repairs on the two nearest to Fifth avenue had been completed. The next car was off its trucks and supported by jacks. Two men were working on it. No one was working on the fourth car from the avenue, but on the fifth Kerns and a man named Harris were working. One man was working on the sixth, and two other workmen were engaged on the seventh.

It became the duty of the yardmaster and the car foreman to remove from the track the nine cars that had been repaired. The yardmaster was in charge of the movement, and the car foreman in charge of the cars. After unlocking the switch, removing the blue flag, and closing the derail, the two walked south to Fifth avenue. The foreman went to the rear of the ninth car and called out to the men further south, in an attempt to notify them of the intended movement. The engine coupled to the cars in the ordinary way. Before coupling to the ninth car, which was next to the car on jacks, the foreman chocked its wheels, so that it could not collide with any of the cars south of it. There was no possibility of any of them being moved, and the men working about them were never in danger. Kerns said that he heard cars bumping together, looked north, saw moving wheels on the track, became alarmed, and, in attempting to get out from under the car on which he was working, slipped and fell against the wheel, and was injured.

It is admitted that plaintiff was never in danger from the movement of the cars. The question is whether the failure to notify him of the intended use of a part of the track—assuming that it was customary to give such notice—was actionable negligence, even though the giving of it would have accomplished nothing except to prevent his alarm. One is required to anticipate only the probable results of his wrongful act. According to plaintiff's contention, the foreman ought to have anticipated, as a result of his failure to notify plaintiff of the intended movement, that the latter would not only become alarm-

ed, but would also, in seeking a place of safety, receive an injury in an unusual manner. In our view of the law, it would be extending the rule of proximate cause beyond its reasonable scope to hold that the foreman was required to anticipate this second improbable contingency.

Judgment reversed.

## LINDSLY v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. April 17, 1926.)

No. 4641.

Criminal law ⚌394—Searches and seizures ⚌7—Search of dwelling house without warrant held in violation of Constitution and statute, and evidence obtained inadmissible (Act Nov. 23, 1921, § 6 [Comp. St. Supp. 1925, § 10184a]).

Search by prohibtion agents of defendant's private dwelling without a warrant, and after refusal of permission by defendant's wife, was in violation of defendant's constitutional rights, and also a crime under Act Nov. 23, 1921, § 6 (Comp. St. Supp. 1925, § 10184a), and evidence so secured was inadmissible against defendant.

In Error to the District Court of the United States for the Eastern District of Louisiana; Charlton R. Beattie, Judge.

Criminal prosecution by the United States against Walter Lindsly. Judgment of conviction, and defendant brings error. Reversed and remanded.

For opinion below, see 7 F.(2d) 247.

Girault Farrar, of New Orleans, La. (Edwin I. Mahoney and Edwin C. Hollins, both of New Orleans, La., on the brief), for plaintiff in error.

Wayne G. Borah, U. S. Atty., and Arthur A. de la Houssaye, and T. M. Logan Bruns, Asst. U. S. Attys., all of New Orleans, La.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is an information in three counts against Walter Lindsly. The first count charges the manufacture, the second count the possession, and the third count the possession of apparatus designed for the manufacture, of intoxicating liquor, all in violation of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.).

Several prohibition officers went to defendant's home during his absence and re-

quested of his wife permission to make a search. They had no search warrant, and on that account the request was refused; but nevertheless the officers proceeded to make a search and found a large quantity of wine and a wine press. Over defendant's objection and exception, evidence of what was found was admitted, and upon it the government principally relied for conviction. 7 F.(2d) 247. There was also evidence to the effect that, before the officers entered defendant's house, some one else, whose identity was not established, poured out large quantities of wine, some of which ran into the street, and made his escape. The officers did not discover defendant in the commission of any crime, nor did they go to his home for the purpose of making an arrest.

Section 25 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½m) provides that no search warrant shall issue to search any private dwelling, unless it is being used for the unlawful sale of liquor, or in part for some business purpose, and section 6 of the Act of November 23, 1921, 42 Stat. 223 (Comp. St. Supp. 1925, § 10184a), makes it an offense for a prohibition officer to search a private dwelling without a search warrant. In Pressley v. United States, 289 F. 477, this court held that the search of a private dwelling under a warrant which failed to charge an unlawful sale was unauthorized, and that evidence procured by such a search was inadmissible. And our ruling in Voorhies v. United States, 299 F. 275, is to the same effect.

Here no warrant was procured, and no attempt was made to comply with section 25 of the Prohibition Act. Cases holding that a search may be made without a warrant by consent are not in point, as in this instance it is undisputed that consent was refused. It is suggested by the government that the officers were made aware of violations of the law by seeing and smelling the wine which had been poured out on the premises, and that therefore it was proper to receive the evidence. But it remains true that the officers did not acquire information which tended to show that a violation of the law had been committed as an incident to a lawful arrest, and we are of opinion that the evidence should have been rejected upon the authority of Agnello v. United States, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. ——, where it was plainly held that "the search of a private dwelling without a warrant is in itself unreasonable and abhorrent to our laws," and that, "save in certain cases as incident to ar-